IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| DEBORAH LAUFER, Individually, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. 20-CV-3149 |
| Q ILL DEVELOPMENT LLC d/b/a EAGLES ) | |
| NEST HOTEL, an Illinois Limited Liability ) | |
| Company, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS**

Comes now Defendant, Q ILL Development LLC d/b/a Eagles Nest Hotel ("Eagles Nest"), an Illinois Limited Liability Company, by its attorneys, Schmiedeskamp Robertson Neu & Mitchell LLP, and moves to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1). In Support of this Motion, Defendant states as follows:

**I. FACTS**

Plaintiff Deborah Laufer filed this lawsuit on June 16, 2020 seeking injunctive relief, attorneys' fees and litigation expenses pursuant to Title III of the Americans with Disabilities Act ("ADA"). In her Complaint, Plaintiff, a resident of Pasco County, Florida and an admitted ADA "tester", alleges that she visited Defendant's hotel website and other third-party travel websites and was unable to review and assess handicap accessible information. See Plaintiff's Complaint, ¶ 2 and ¶10. Although she lives over 1000 miles away from the Eagles Nest hotel, Plaintiff claims that she "plans to return" to Defendant's website at some unspecified point in the future to assess the hotel's website. See Plaintiff's Complaint, ¶ 11.

1

Since May 2019, Plaintiff has filed, in the aggregate, over 200 lawsuits in New York[1], Georgia, Florida, Massachusetts, Connecticut and now Illinois and is represented by the same law firm in most of these lawsuits. This case is one of at least twenty (20) lawsuits filed by Plaintiff in Illinois against various businesses and places of public accommodation under Title III of the ADA. (See the Pacer list attached as **Exhibit B**). In these "drive by" lawsuits, Plaintiff consistently alleges certain website violations under the ADA. See Plaintiff's Complaint, ¶ 10. It appears, based on the volume of like cases, the purpose of these lawsuits is not to remedy legitimate website deficiencies encountered by the Plaintiff or to cure ADA violations because the Plaintiff lacks any sincerely held future plans to travel to purchase goods and services offered at these businesses, but rather, to generate attorneys and expert fees.[2]

## II. LEGAL STANDARD OF REVIEW

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes a defendant at any time to move for dismissal of a claim for lack of subject matter jurisdiction. More specifically, Rule 12(b)(1) "provides for dismissal of a claim based on lack of subject matter jurisdiction, including lack of standing." *Stubenfield v. Chicago Housing Authority*, 6 F.Supp.3d 779, 782 (N.D. Ill. 2013) (citing *Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856 (7th Cir. 1996). Article III of the Constitution limits federal judicial power to certain "cases" and "controversies," and the

---

[1] Plaintiff Laufer has recently been instructed by the Northern District of New York to file 27 memorandums of law as to her legal standing in these cases. See https://www.adatitleiii.com/2020/05/northern-district-of-new-york-orders-serial-plaintiff-to-justify-standing-in-over-27-separate-hotel-reservations-website-lawsuits/ and the attached Order from the Northern District of New York dated May 6, 2020 attached as **Exhibit A** ("There appears to be a serious question as to whether Plaintiff has established standing, in this, or any of her other cases, and thus whether the Court has subject matter jurisdiction over these actions.) See, e.g. Laufer v. Laxmi & Sons LLC, 1:19-cv-01501 (BKS/L) (Dkt. No. 15, at 7. May 6, 2020). ("There are no facts in the Complaint or Plaintiff's affidavit indicating that she has ever traveled to Rensselaer, New York, or anywhere in New York, or that she has any reason to travel anywhere in New York or any reason to seek lodging anywhere in New York.").

[2] The Plaintiff made no effort to notify Defendant of any purported website deficiencies or ADA violations prior to institution of this lawsuit.

2

"irreducible constitutional minimum" of standing contains three elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–60 (1992). As the party invoking federal jurisdiction, a plaintiff bears the burden of establishing the elements of Article III standing. *Lujan*, 504 U.S. at 561. The Supreme Court has held that "each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Lujan*, at 561.

In the instant case, Plaintiff, Deborah Laufer, has failed to plead sufficient facts to demonstrate a likelihood of future injury necessary to establish an "injury in fact" required for standing and her Complaint should therefore be dismissed pursuant to Rule 12(b)(1).

### III. ARGUMENT

**A.    Standing of ADA "tester" Plaintiff**

Title III of the ADA prohibits any person who owns, leases, or operates a place of public accommodation from discriminating against an individual on the basis of that individual's disability. See 42 U.S.C. § 12182(a). A person alleging discrimination under Title III must show (1) that he is disabled within the meaning of the ADA; (2) that the defendant is a private entity that owns, leases, or operates a place of public accommodation; (3) that the plaintiff was deprived of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of the defendant; and (4) that the defendant failed to make reasonable modifications that would accommodate the plaintiff's disability without fundamentally altering the nature of the public accommodation. See 42 U.S.C. § 12182(a) and (b).

While the "tester" status of a plaintiff who challenges a defendant's compliance with a statute does not defeat standing, it does not automatically confer it either; a tester must still satisfy the elements of standing, including the injury-in-fact requirement. *Carello v. Aurora Policemen Credit Union*, 930 F.3d 830, 833 (7th Cir. 2019). Although dignitary harm is cognizable under the

ADA, not all dignitary harms are sufficiently concrete to serve as injuries-in-fact, as required to establish standing. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq. *Carello*, at 834. ADA plaintiff who was personally denied equal treatment by the challenged discriminatory conduct has suffered a concrete injury, but dignitary harm stemming from the mere knowledge that discriminatory conduct is occurring is an "abstract stigmatic injury" that the plaintiff lacks standing to vindicate. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq. *Id.* at 834.

In order to pursue an ADA claim, a plaintiff must satisfy the standing requirement, a prerequisite for federal court jurisdiction growing out of the "case or controversy" requirement of Article III of the United States Constitution. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). The US Supreme Court has developed a three-prong test to determine whether a plaintiff has standing. "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

The first prong of the test requires that the "the plaintiff have suffered an 'injury in fact' -- an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Bennett v. Spear*, 520 U.S. 154, 167 (1997) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The "injury in fact" demanded by Article III requires an additional showing when a party seeks injunctive relief, the only form of relief available under Title III of the ADA. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1329 (11th Cir. 2013). In addition to past injury, a plaintiff seeking injunctive relief must show "a real and immediate - as opposed to a merely conjectural or hypothetical - threat of future injury." *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001) (emphasis original).

### B. Plaintiff Lacks Standing Because She Has Not Alleged an Injury in Fact

#### i. Plaintiff fails to allege a concrete and particularized injury

Concreteness and particularization are distinct components of an injury in fact, *Spokeo*, 136 S. Ct. at 1548, but in the case of abstract dignitary harm, they are two sides of the same coin. "Indignation at violation of the law is not concrete because it does not impact the plaintiff personally; it is not particularized because it does not affect him in an "individual way." See *Lujan* 504 U.S. at 560 n.1. For a harm to be particularized, "[t]here must be some connection between the plaintiff and the defendant that 'differentiates' the plaintiff so that his injury is not 'common to all members of the public.' *Carello*, at 834 citing *Griffin v. Dept. of Lab. Fed. Credit Union*, 912 F.3d 649, 654 (4th Cir. 2019).

Here, Plaintiff lacks any connection to the Eagles Nest hotel. There is no difference between Plaintiff, and any other disabled adult in the country. ("Appellants' claims [about racial discrimination in the hiring process] are generalized grievances shared in substantially equal measure by a large class of citizens."); *Am. Civil Liberties Union of Ill. v. City of St. Charles*, 794 F.2d 265, 268 (7th Cir. 1986); ("[Deep offense] is not by itself a fact that distinguishes [the plaintiff] from anyone else in the United States who disapproves of such displays."). *Griffin*, 912 F.3d at 656.

Plaintiff has not alleged any connection to the Defendant's hotel to establish a concrete or particularized harm, other than viewing an online website. See Plaintiff's Complaint ¶10. If Plaintiff were to allege an actual connection i.e. planned on actually staying at the hotel in Quincy, then perhaps her standing would be realized. But, not until such intent is shown can she avail herself to the actual services Defendant offers, as she is no more entitled to an injunction than any

other disabled citizen who views its website. As such, Plaintiff cannot establish standing based on the allegations submitted and her Complaint should be dismissed as a matter of law.

C. **Plaintiff Has No Standing To Obtain Injunctive Relief Because Plaintiff Has Not Properly Alleged A Real And Immediate Threat Of Future Injury**

In ADA cases, courts have held that a plaintiff lacks standing to seek injunctive relief unless he alleges facts giving rise to an inference that he will suffer future discrimination by the defendant. *Scherr v. Marriott International*, 703 F.3d 1069, 1075 (7th Cir. 2013). Some district courts, in determining whether a plaintiff has met the immediacy requirement of *Lujan*, have used a four factor test in order to gauge the plaintiff's likely intent to return. The "proximity test" considers: (1) the proximity of the place of public accommodation to plaintiff's residence; (2) plaintiff's past patronage of defendant's business; (3) the definitiveness of plaintiff's plans to return; and (4) the plaintiff's frequency of travel near defendant. *Colorado Cross-Disability Coalition v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211 (10th Cir. 2014) (plaintiff's status as a tester does not automatically grant a plaintiff standing; plaintiff must still satisfy standing requirements, including real and immediate threat of future injury).

Here, the Plaintiff's Complaint fails to satisfy this four prong test. Specifically, the Plaintiff is over 1000 miles away from the Eagles Nest hotel. See Plaintiff's Complaint ¶ 1. The Plaintiff fails to allege she has previously visited or been a patron at Defendant's hotel. Additionally, there are no facts in the Complaint indicating that she has ever traveled to Quincy, Illinois, or anywhere in Illinois, or that she has any reason to travel anywhere in Illinois or any reason to seek lodging anywhere in Illinois. There are no facts alleged satisfying the immediacy test outline in *Lujan*. For the reasons stated herein, Plaintiff's alleged injury is not imminent, and therefore, she has not stated facts alleging an injury in fact. Plaintiff's Compliant should be dismissed for lack of standing.

Additionally, in the context of Title III ADA suits, courts have uniformly required plaintiffs to allege that they have a plausible intention to return to patronize a public accommodation or otherwise utilize its goods or services. See, e.g *Cohan v. Bensenville Hosp. Inc.*, No. 15-cv-00214, 2016 U.S. Dist. LEXIS 62207, at *6 (N.D. Ill. May 11, 2016) (plaintiff had standing where he alleged that he visits Chicago numerous times a year and he would stay at defendant's Chicago hotel during future visits but for its ADA violations); *Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211-12 (10th Cir. 2014) (plaintiff had standing to sue mall store where she stated that she would return to the store at least six times per year); *Scherr v. Marriott International*, 703 F.3d 1069, 1075 (7th Cir. 2013) (plaintiff had standing to sue defendant's Overland Park, Kansas hotel where she alleged that her extended family lives in the nearby area but did not have standing to sue defendant's other 56 hotels since she did not allege concrete intent to stay at them in the future).

The Eleventh Circuit case of *Houston v. Marod Supermarkets, Inc.* is instructive. In *Houston*, the plaintiff was a tester and not a bona fide patron of the defendant supermarket. 733 F.3d 1323, 1329 (11th Cir. 2013). The tester plaintiff sued the supermarket alleging architectural barriers in violation of Title III of the ADA. Id. at 1325. The court first addressed whether the plaintiff's tester status negated his injury in fact. Relying on other discrimination statutes, such as Title II of the ADA in the Fair Housing Act where tester standing is not prohibited, the court determined that the plaintiff's tester status did not preclude standing. *Id*. at 1330-34.4

Noting that this conclusion did not end the standing analysis, the court then addressed whether the plaintiff had properly alleged a real and immediate threat of future injury. *Id*. at 1334. In ruling that he had sufficiently pled threat of future injury, the court found significant the following facts: the law office of plaintiff's lawyer was located near the defendant supermarket;

7

plaintiff visited his lawyer's office "on a regular basis"; and plaintiff anticipated going to his lawyer's office in the near future. And most significant, the court relied on the plaintiff's averment that he "would return to the Defendant's store to shop if [he] were able to park in the parking spaces, have accessible restrooms, and be able to avail [him]self of the store's other facilities." *Id*. at 1336 (emphasis added). Thus, the plaintiff adequately alleged a future intent to actually use the supermarket's services. This was crucial in him showing future threat of injury.

In like manner, the Second Circuit's opinion in *Harty v. Simon Property Group, Ltd. Partnership*, 428 F. App'x 69, 71 (2nd Cir. 2011) is instructive. There the plaintiff brought suit against a New York mall for violation of Title III of the ADA. The Second Circuit found a likelihood of future injury because plaintiff alleged that he planned to visit New York in the near future for specific personal and professional reasons and that he intended on shopping at the defendant mall while visiting. Id. at 72. The Second Circuit in *Harty* distinguished its prior ruling in *Freydel v. New York Hospital*, 242 F.3d 365 (2nd Cir. 2000). In *Freydel*, plaintiff sued New York Hospital for failing to provide Russian sign-language interpreter services during her in-patient treatment following a heart attack. *Harty*, 428 F. App'x at 72. Seeking injunctive relief under the ADA, she argued she was likely to suffer future injury because her chronic medical conditions could require future care and it was possible that she could be referred again to New York Hospital, a tertiary care center in the same medical network as her local hospital. The Second Circuit rejected her reasoning, finding that her potential return to the hospital "was speculative and beyond her control, i.e., her future health care needs and her being referred to New York Hospital." Id.

As made clear in *Freydel*, the plaintiff could not simply allege that she was going to return to the hospital to test its ADA compliance. Standing required an actual, concrete intent to return

8

to the hospital for use of its services, which the *Freydel* plaintiff lacked. By contrast, the plaintiff in *Harty* was able to show likelihood of future injury by alleging a specific future intent to use the defendant mall's goods and services. See also *Norkunas v. Park Road Shopping Center, Inc*., 777 F. Supp. 2d 998, 1005 (W.D.N.C. 2011) ("the naked assertion of a desire to return to a defendant establishment for the sole purpose of confirming ADA-compliance, without more, is insufficient to establish standing."); *Access 4 All, Inc. v. Thirty East 30th Street, Ltd. liability Co*., 2006 U.S. Dist. LEXIS 96742, at *31 (S.D.N.Y. Dec. 11, 2006) ("Although Plaintiffs are correct that courts have found that a plaintiff may have standing where they legitimately have a dual motivation for returning to a public accommodation, i.e., to avail themselves of goods and services and to verify ADA compliance, there must be at least some component of direct injury.") Kelly Johnson, Note: Testers Standing Up for Title III of the ADA, 59 Case W. Res. 683, 698 (2009) ("Testers attempting to assert standing under Title III of the ADA have met animosity in federal courts throughout the nation. The vast majority of courts that have dealt with the issue have denied standing to plaintiffs.").

      The case law unequivocally establishes that a party seeking relief under Title III of the ADA must show a future intent to actually utilize the accommodation in question. And as the District Court in *Carello* correctly noted, "injunctive relief is not warranted in circumstances where the plaintiff has no intent to access the accommodation." (See *Carello* Northern District Court Order dated August 7, 2018, page 5 attached as **Exhibit C**). In the case at bar, Plaintiff's Complaint reveals she has no intent to visit the Eagles Nest nor does she allege she has plans to stay at the Eagles Nest, either soon or in the future. No future injury is alleged or plead. She does not have a plausible intent to return to Defendant's website but for to test ADA compliance of the website.

Plaintiff's Title III ADA claim undermines this universally recognized requirement. See *Griffin*, 293 F. Supp. 3d at 579 ("Such a result runs counter to the Supreme Court's emphatic statement that a violation of a statute 'divorced from any concrete harm' is not sufficient to allege an injury-in-fact.") (quoting *Spokeo, Inc*., 136 S. Ct. at 1549). Put simply, mere dignitary harm is insufficient to establish standing in this matter, and Plaintiff cannot establish threat of future injury by claiming she will return to Defendant's website in the future only to confirm its compliance. This harm does not constitute an injury in fact under Article III.

D. **As A Matter Of Policy, Allowing Such A Claim To Be Sustained, When The Plaintiff Has No Intent To Electronically Reserve A Room Or Actually Stay At The Hotel In Quincy, Eviscerates Article III Standing Requirements.**

Allowing Plaintiff's claim to stand based on the allegations stated in her Complaint, would, essentially, permit any disabled individual in the country (or the world, for that matter) to sue any business or public accommodation in the country if he or she believes the business website is non-compliant, even if the disabled person has no reasonable intention of actually utilizing the business' goods and services. Thus, as here, a Florida resident could sue a hotel in rural Illinois for operating a non-compliant website, even if the hotel's goods and services can only be consumed in person and the Florida resident has no intention of ever visiting Illinois, let alone the hotel.

Congress clearly did not intend such absurd results. *In re Baker*, 430 F.3d 858, 860 (7th Cir. 2005) (courts should not interpret a statute in a manner that would yield an absurd result). In *Carroll v. Farmers & Miners Bank*, the plaintiff brought a Title III ADA claim against a bank for maintaining a non-compliant website, despite the plaintiff living hundreds of miles from the bank's nearest branch. *Carroll v. Farmers and Miners Bank*, 2:17CV00049, 2018 WL 1659481, at *1 (W.D. Va. Apr. 5, 2018). In rejecting the plaintiff's claim that he had standing to sue as a "tester," the district court reasoned as follows:

> [T]o bring an action as a tester, Carroll must nevertheless establish standing, which he cannot. "[A] Title III plaintiff cannot use [his] status as a tester to satisfy the standing requirements where [he] would not have standing otherwise." *Norkunas*, 777 F. Supp. 2d at 1005. Carroll contends that his standing as a tester should not be challenged because enforcement of the ADA is accomplished through persons such as himself. On this basis, Carroll contends that he theoretically has standing to sue every bank in the United States under the ADA. Carroll essentially argues that our traditional notions of standing should not apply to lawsuits involving online services offered by places of public accommodation, and that any accessibility barrier contained within such online services automatically establishes injury in fact.
>
> I decline to broaden the standing requirements under Article III in such a manner. Doing so would effectively eliminate standing requirements altogether in the context of the Internet, and "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases and controversies." *Spokeo*, 136 S. Ct. at 1547.

*Farmers & Miners Bank at \*3*. The district court's reasoning in *Farmers & Miners Bank* is especially applicable here, where Plaintiff has alleged no facts indicating intent to reserve a room online or actually stay at the Eagles Nest in Quincy. Allowing this litigation to proceed will only open the floodgates to more claimants bringing Title III ADA lawsuits against businesses which they have no intention of patronizing, using or visiting.

## **REQUEST FOR ATTORNEY FEES**

This lawsuit defies justice and good faith litigation. "Acting through their historic equity jurisdiction, District Courts may, nonetheless, as an exception to the American Rule, award such fees in certain cases where, as it has been said, dominating reasons of justice so require." 31 A.L.R. Fed. 833 (Originally published in 1977). "The rationale or purpose of allowing recovery of costs, "as between solicitor and client," in this class of cases is said to be punitive, with the appropriateness of the relief in a particular case being recognized as a matter addressed solely to the trial court's discretion, which will be disturbed only on a showing of a clear abuse thereof." 31 A.L.R. Fed. 833 (Originally published in 1977).

The purpose of this lawsuit is not to remedy website deficiencies encountered by the Plaintiff or to cure ADA violations. Plaintiff, a resident near Tampa Bay, Florida, has absolutely no intention or future plans to stay at the Eagles Nest hotel in Quincy, Illinois. There will never be a day when the Plaintiff actually intends to stay at this hotel, where the information she is requesting regarding handicap accessible room availability is relevant to her. In reality, this lawsuit is nothing more than a legal shakedown for pursuing attorneys and expert fees, as evidenced by the fact Plaintiff has filed over 200 of the same lawsuits, now including twenty (20) in Illinois, and the Plaintiff made no effort to notify Defendant of any purported website deficiencies or ADA violations prior to institution of this lawsuit. As a means to stop such frivolous lawsuits from being filed in the future, Defendant hereby requests that, upon granting of this motion and dismissal of this case, that Plaintiff be ordered to pay Defendant reasonable attorneys' fees and costs. Upon the entering of such order, Defendant shall timely submit the amount of fees and costs incurred for the Court's review and approval.

## **CONCLUSION**

For the following reasons, Plaintiff's Complaint should be dismissed as a matter of law for lack of standing under Federal Rule of Civil Procedure 12(b)(1).

By: /S/ *Daniel M. McCleery*
Daniel M. McCleery; #6321087
Schmiedeskamp Robertson Neu & Mitchell LLP
Attorneys for Defendant Q ILL Development LLC d/b/a Eagles Nest Hotel, an Illinois Limited Liability Company
525 Jersey
Quincy, IL 62301
Telephone: (217) 223-3030
Facsimile: (217) 223-1005
E-mail: dmccleery@srnm.com

4843-0833-2231, v. 1

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of August, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

    Kimberly A. Corkill                  kimberlyatlaw@gmail.com
    Thomas B. Bacon, P.A.
    7 N. Coyle Street
    Pensacola, FL 32502

and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants: None.

                                              By: /S/ *Daniel M. McCleery*
                                              Daniel M. McCleery; #6321087