E-FILED
Thursday, 20 August, 2020  01:49:07 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**

**DEBORAH LAUFER,**
       **Plaintiff,**

**v.**                                    **Case No: 3:20-cv-3149**

**Q ILL DEVELOPMENT, LLC**
**dba EAGLES NEST HOTEL,**
       **Defendant.**

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

By: */s/ Kimberly A. Corkill, Esq*.

Kimberly A. Corkill, Of Counsel
Thomas B. Bacon, P.A.
7 N. Coyle Street
Pensacola, FL 32502
ph. 850-375-3475
fx 877-828-4446
kimberlyatlaw@gmail.com
Florida Bar Id. No. 84942

Thomas B. Bacon, Esq.
Thomas B. Bacon, P.A.
644 North Mc Donald St.
Mt. Dora, FL 32757
ph. (850)375-3475
kimberlyatlaw@gmail.com
Florida Bar. Id. No. 139262

I.      **Introduction**

Plaintiff, is a Florida resident and disabled person within the meaning of the Americans

With Disabilities Act, 42 U.S.C. Sections 12181, et seq. ("ADA"), and relies on a wheelchair or

cane to ambulate and is vision impaired. Defendant books rooms for its hotel through an online

online reservations service operated through multiple websites.  (Hereinafter "websites", "online

reservations systems" or "ORS".) Laufer Affid., para. 6, Exhibit A attached hereto.  The purpose

of this ORS is so that Defendant can reach out and market to persons all over the country,

including Florida,  in their own homes,  to solicit their patronage, provide them with information

so that they can make a meaningful choice in planning trips, and, in some instances, book a room

at the hotel.  As such, the Defendant's ORS is required to comply with the requirements of 28

C.F.R. Section 36.302(e)(1)(hereinafter "Regulation"), by identifying and allowing for booking

of accessible rooms and providing accurate and sufficient information as to whether all the

features at the hotel are accessible. Prior to the filing of this lawsuit, Plaintiff reviewed the ORS

for Defendant's hotel and found that it did not comply with the Regulation.  Laufer Affid., para.

6. Plaintiff therefore filed the instant action for injunctive relief pursuant to the ADA.

Defendant does not contest the fact that its ORS discriminates against disabled persons.

Instead, Defendant argues that, despite suffering discrimination, this disabled person has no

recourse to the law.

Briefly, numerous authorities have rejected the argument that a plaintiff must intend to

book a room at the hotel, or otherwise have any nexus to the physical property. Rather,

encountering a discriminatory ORS constitutes a complete injury in fact. See, e.g. *Parks v.*

*Richard*, 2020 U.S. Dist. Lexis 86790 (M.D. Fla. 2020). The rules of statutory construction

prohibit the imposition of any intent or nexus requirement into the Statute. See, e.g. *Bates v. United States*, 522 U.S. 23, 29 (1997)(intent to defraud requirement cannot be judicially added). Lastly, even though an intent to visit is not required, the Plaintiff does indeed intend to visit the area and stay in hotels.

## II.     Standard

Under Fed. R. Civ. P. 12(b)(6), the Court must accept "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *RLJ Lodging Trust v. Nat'l Ret. Fund*, 2018 U.S. Dist. LEXIS 143911, *9 (N.D. Ill. 2018). When ruling on a motion to dismiss for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1), a district court "must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894. 897 (N.D. Ill. 1995). 12(b)(1) motions are not meant to decide the merits of the case. *PrimeSource Healthcare of Ohio, Inc. v. Sebelius*, 2014 U.S. Dist. LEXIS 93293, *7   (N.D. Ill. 2014); *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 n.1 (7th Cir. 1996). A court can transform a motion for dismissal into one for summary judgment, when matters outside the pleading are presented. *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993).  If a court is going to disbelieve the plaintiff on the issue of standing, it cannot be in the context of a rule 12(b)(1) motion, but must be pursuant to the factfinding process. *Brooke v. Kashl Corp.*, 362 F. Supp.3d 864, 876  (S.D.Ca. 2019)

## III.     Defendant's Theory Has Been Widely Rejected

Defendant cites NO cases involving ORS or website discrimination and ignores the overwhelming body of authorities which have considered and rejected its arguments. Defendant cites only cases where a disabled plaintiff had encountered discrimination when he or she visited

a physical property. These cases, as one court noted, are entirely irrelevant to cases involving

website discrimination. *Camacho v. Vanderbilt University,* 2019 WL 6528974 at p. 11, 2019

U.S. Dist. Lexis 209202 (S.D.N.Y. 2019). The reason why such cases are entirely irrelevant is

because, in physical barrier cases,  the injury is only suffered AT the physical property. The

plaintiff was at the physical property when he suffered discrimination in the first instance, and

must return to the physical property to suffer discrimination again. By stark contrast, in cases

involving discriminatory hotel online reservations systems, the injury is suffered in the plaintiff's

own home then they review the website on their own computer.

In *Parks v. Richard*, 2020 U.S. Dist. Lexis 86790 (M.D. Fla. 2020), one court rejected the

defendant's argument that the plaintiff needed to intend to book a room at the hotel. The court

held that the:

> ADA claim is based upon [defendant's] website failing to identify the accessible features
> of the motel and its rooms, in violation of 28 C.F.R. § 36.302(e)(1)(ii). Therefore, the
> relevant 'future injury' inquiry relates to the motel's website and reservation system, rather
> than the motel's physical property." [Citation omitted.] While Parks may have never
> visited the motel, he visited its website and several third-party sites.

*Id*. at *7.  In *Kennedy v. Gold Sun Hospitality, LLC*, 8:18-cv-842-T-33CPT, DE 23, at pp.  30-31,

(M.D. Fla. June 18, 2018), another court rejected a physical nexus argument, holding that the

plaintiff's injury occurred in comfort of her own home when she visited defendant's

discriminatory hotel website. In *Kennedy v. Swagath Hospitality, LLC*, 0:19-cv-60583-DPG, DE

27 (S.D. Fla. 1/2/2020), another court rejected the defendant's  physical nexus argument, stating:

> Plaintiff alleges that (1) she visited Defendant's website to ascertain whether it met the
> requirements of 28 C.F.R. Section 36.302(e), (2) she intends to return to the website to
> test it for compliance and/or to reserve a guest room, and (3) Defendant's failure to
> comply with the Americans with Disabilities Act ("ADA") is ongoing and harmful to
> her..... Based on these allegations, the Court finds that Plaintiff has sufficiently alleged an

3

injury-in-fact and an intent to the return to the website in the future.

In *Kennedy v. WGA*, 2:19-cv-0095-RWS, DE 16, p. 9 (N.D. Ga. 11/5/2019), another court

rejected a defendant's physical nexus argument (filed at DE 5). The court stated: "[Defendant]'s

argument [] centers on whether [plaintiff] suffered a concrete and particularized injury only from

visiting [the hotel's] website and not the physical premises. DE 16, at pp. 7-8. The court held

that: "visiting the website suffices" and that "a plaintiff's inability to fully and effectively use an

establishment's website constitutes an injury-in-fact." *Id*. at 9. See also *Poschmann v. Fountain*

*TN, LLC*, 2019 U.S. Dist. Lexis 159417, \*\*4-6 (M.D. Fla. 2019)(holding that the plaintiff's ADA

claim was based on the discriminatory website and, "[t]herefore, the relevant "future injury"

inquiry relates to the motel's website and reservation system, rather than the motel's physical

property." ); *Poschmann v. Coral Reef of Key Biscayne Developers, Inc.*, 2018 U.S. Dist. Lexis

87457. \*8 (S.D. Fla. 2018)(proper motive for returning to discriminatory website is either "to

determine whether the Hotel is accessible to him, and, if so, to reserve a room at the Hotel **or** to

test the Hotel's Website reservation system for its compliance with the ADA."); *Kennedy v. Nila*

*Investments, LLC*, 2:19-cv-90-LGW-BWC, DE 34. p.5  (S.D. Ga. 7/1/20)(after an evidentiary

hearing, finding that the plaintiff suffered discrimination when she visited the non-compliant

ORS  "for the purpose of assessing the accessibility features of the property and to ascertain

whether those sites met her accessibility needs as well as the requirements of 28 C.F.R. §

36.302(e)(1)."  Other courts rejected the defendants' arguments that intent to book a room or visit

the hotel was required.  See *Kennedy v. New Yorker Hotel, Miami, LLC*, 0:18-cv-62897-WPD,

DE 34 (6/6/19);  *Kennedy v. Murnane, et al.*, 0:18-cv-63086-WPD, DE 10 (S.D. Fla. 3/5/19);

*Kennedy v. Galleon Resort Condominium Assn, Inc., et al.*, 19-cv-62421-CMA, DE 52 (S.D. Fla.

1/28/20); *Kennedy v. Italia, LLC*, 0:19-cv-61938-MGC, DE 35 (S.D. Fla. 8/10/20)(rejecting

physical nexus argument made at DE 17).

Numerous other courts have held that a disabled person suffers injury-in-fact when they

visit a hotel's discriminatory online reservations system. See  *Kennedy v. Sai Ram Hotels, LLC*,

2019 U.S. Dist. LEXIS 80111, *4-6 (M.D. Fla. 5/13/19), citing *Honeywell v. Harihar Inc.*, 2018

U.S. Dist. LEXIS 203740,(M.D. Fla. Dec. 3, 2018); *Kennedy v. Floridian Hotel, Inc.*,  2018 U.S.

Dist. LEXIS 207984, at *9 (S.D. Fla. 2018);  *Poschmann v. Liberty Inn Motel, LLC*,

2:18-cv-14348, ECF No. 17 at 4-5 (S.D. Fla. Jan. 23, 2019); *Brooke v. Hotel Inv. Grp., Inc.*, 2017

U.S. Dist Lexis 150717, * 6 (D. Ariz. 2017);  *Brooke v. Regency Inn-Downey, LLC*, 2017 U.S.

Dist. Lexis 150716 (D. Ariz. 2017). This injury occurs in the comfort of the plaintiff's own

home. *Gold Sun,* at pp.  30-31 (plaintiff's injury occurred in comfort of her own home when she

visited defendant's discriminatory hotel website).  Additional cases support the proposition that

viewing a discriminatory commercial website constitutes injury-in-fact in the context of vision

impairment based claims. See, e.g. *Carroll v. Fedfinancial Fed. Credit Union*, 324 F. Supp. 3d

658, 664 (E.D. Va. 2018); *Access Now, Inc. v. Otter Prods., LLC*, 280 F. Supp. 3d 287, 294 (D.

Mass. 2017); *Jones v. Piedmont Plus Fed. Credit Union*, No. 1:17-CV-5214- RWS, 2018 WL

4694362, at *1 (N.D. Ga. Sept. 26, 2018); *Jones v. Family First Credit Union,* No.

1:17-CV-4592-SCJ, 2018 WL 5045231, at *4 (N.D. Ga. Aug. 6, 2018). For example, in

*Camacho v. Vanderbilt Univ.*, 2019 U.S. Dist. Lexis 209202, *30 (S.D.N.Y. 2019), one court

rejected the notion that the plaintiff's possible visit to the subject property was at issue, holding:

> Plaintiff has claimed that he was denied access to the Website, not Defendant's physical
> location itself. Thus, Defendant need not have shown that he intended to "return" to
> Defendant's school in Nashville, Tennessee. He is only required to have established a

reasonable inference that he intended to return to the Website...

IV.     **The Rules Of Statutory Construction Prohibit The Imposition Of A Physical Nexus Requirement**

Plaintiff's claims are based on the following: 42 U.S.C. Section 12182(a) provides:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation....

42 U.S.C. Section 12182(b)(2)(A) expands on the definitions of the above subsection to include:

a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities,...

42 U.S.C. Section 12182(b)(2)(A)(ii).  This latter subsection is the subject of regulations

promulgated by the Department Of Justice ("DOJ").[1] Specifically, the DOJ promulgated  28

C.F.R. Section 36.302(e)(1)(hereinafter "Regulation"), which provides:

(1)Reservations made by places of lodging. A public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means, including by telephone, in-person, or through a third party -
(i) Modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms;
(ii) Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs; ....

It is paramount that the plain words of the Statute and duly promulgated Regulation

govern.  Interpretation of any statute begins with "the language of the statute itself." *Capitol*

*Leasing Co. v. FDIC*, 999 F.2d 188, 192 (7th Cir. 1993). If the wording is unambiguous, this

---

[1]The DOJ promulgated 28 C.F.R. 36.302 to carry out the provisions of the ADA. *Poschmann v. Coral Reef of Key Biscayne Developers, Inc.*, 2018 U.S. Dist. LEXIS 87457 *6 (S.D. Fla. May 23, 2018).

court must enforce the congressional intent embodied by the statute. *Id*. "Our duty is to say what

statutory language means, not what it should mean, and not what it would mean if we had drafted

it." *Houston v. Marod Supermarkets, Inc.,* 733 F.3d 1323, 1333-34 (11th Cir. 2013.  A court may

not read words or elements into a statute that do not appear on its face, including a requirement

regarding intent.  See *Bates v. United States*, 522 U.S. 23, 29 (1997)(intent to defraud

requirement cannot be judicially added). "We are not at liberty to rewrite the statute to reflect a

meaning we deem more desirable.". *Marod*, 733 F.3d at 1334, citing  *Ali v. Fed. Bureau of*

*Prisons, 552 U.S. 214, 228 (2008)*.  A court may not More significantly, if such additional

restrictive language is found elsewhere in the Statute, but not in the provisions governing the

case at bar, such exclusion is dispositive.

> "[W]here Congress includes particular language in one section of a statute but omits it in
> another section of the same Act, it is generally presumed that Congress acts intentionally
> and purposely in the disparate inclusion or exclusion."

*INS v. Cardoza—Fonseca*, 480 U.S. 421, 432 (1987).  The Statute and Regulation are directly on

point and unambiguously spell out all the elements of a cause of action. The plaintiff's right to

injunctive relief is accorded by 42 U.S.C. Section 12188(a), which provides that: "The remedies

and procedures set forth in section 2000a–3(a) of this title are the remedies and procedures this

subchapter provides to **any person who is being subjected to discrimination** on the basis of

disability in violation of this subchapter..." (Emphasis added.)  A disabled person who

encounters a non-compliant ORS becomes entitled to relief under this provision pursuant to two

different subsections "of this subchapter". First, 42 U.S.C. Section 12182(a) clearly spells out a

complete cause of action as follows: "No individual shall be discriminated against on the basis of

disability in the full and equal enjoyment of the ... services ... of any place of public

accommodation..."  A commercial website is a "service" of a place of public accommodation.

*Haynes v. Dunkin Donuts, LLC*, 741 Fed. Appx. 752, 754 (11th Cir. 2018)(unpublished

opinion)(describing a commercial website as a "service" of a place of public accommodation);

*Nat'l Fed'n Of The Blind v. Target Corp.*, 452 F. Supp. 946, 953 (N.D. Cal. 2006)(same).

Because a hotel's reservation  website system is a "service", all that is required is that a disabled

person be deprived of full and equal enjoyment of this "service".[2]

Alternatively,42 U.S.C. Section 12182(b)(2)(A) expressly provides that "discrimination"

includes a violation of 42 U.S.C. Section 12182(b)(2)(A)(ii). Because a non-compliant ORS

violates this latter subsection, it is therefore "discrimination" and thus actionable to "any person"

who encounters it.

The rules of statutory construction mandate a finding that a physical nexus requirement

can NOT be imposed because any language expressing this requirement is conspicuously missing

from the above cited Regulation and Statutory subsections. As set forth in the following cases,

the imposition of substantially similar requirements have been extensively considered and

rejected because they were noted to be present in other statutes or subsections, but absent from

the applicable sections or subsections governing the claims before the courts reviewing them.

In *Marod.,* 733 F.3d 1323, the Eleventh Circuit held that a disabled tester has standing to

pursue a Title III ADA case for violations of 42 U.S.C. Section 12182. Generally, it held that a

plaintiff's motive and intent are entirely irrelevant and that there is no requirement that they be a

client or customer or a bona fide customer. In this regard, the Eleventh Circuit relied on Supreme

---

[2]An online reservations system may also be characterized as a  privilege or advantage,
also referenced in Subsection 12182(a).

Court cases and applied the rules of statutory construction.  Both *Marod*, 733 F.3d at 1333, and

*PGA Tour v. Martin*, 532 U.S. 661, 678-79 (2001),  held that an ADA plaintiff suing under 42

U.S.C. Section 12182(a) does not have to be a "client or customer" of the defendant. In both

cases, the Eleventh Circuit and Supreme Court noted that a **different** subsection of the same

statute contained a "client or customer" requirement that was not present in the plain language of

Subsection 12182(a). Therefore, both courts held, the requirement could not be applied. Because

the "client or customer" language was present in one subsection, but missing from the subsection

that governed, the requirement could not be imposed. In  *PGA Tour*, 532 U.S. at 678-79, the

defendant had argued that the plaintiff had no standing to sue unless he was a "client or

customer" of the place of public accommodation. The Court rejected this notion. As the Court

observed, the Statute's "client or customer" limitation was set forth in only one Subsection of the

Statute, but missing from others that governed the case before it. Specifically, Section

12182(b)(1)(A)(iv) contained the "clients or customers" limitation. However, the Subsection at

issue in *PGA Tour*, namely 12182(a)[3] **did NOT** contain this limiting language. Therefore, the

Court stated that: "clause (iv) is not literally applicable to Title III's general rule prohibiting

discrimination against disabled individuals. Title III's broad general rule contains no express

"clients or customers" limitation..." *PGA Tour*, 532 U.S. at 679 (citing Subsection 12182(a)).

Therefore, as the Supreme Court observed, limiting language contained in one Subsection of

Title III cannot be applied to other Subsections of the same statute where that language is

missing.

　　　　In *Marod*, the Eleventh Circuit considered other cases applying other civil rights statutes.

---

[3]Subsection 12182(a) is the same Subsection that governs the instant action.

Among these was *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), discussed by the

*Marod* Court at 733 F.3d at 1330. As noted by *Marod* regarding *Havens*:

> The Supreme Court concluded that a black tester who was misinformed about the availability of a rental property had alleged sufficient injury-in-fact to support standing to sue under § 804(d) of the FHA. Id. at 374, 102 S. Ct. at 1121-22. The plaintiff-tester in Havens Realty never intended to rent the apartment; rather, his sole purpose was to determine whether the defendant engaged in unlawful practices. *Id*.
>
> In considering the tester's standing, the Supreme Court in *Havens Realty* explained that the "'the actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Id. at 373 []*; see also *Linda R.S. v. Richard D., 410 U.S. 614, 617 n.3, [](1973)* ("Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute."). The statutory language of the relevant FHA provision, § 804(d), was therefore critical to the Supreme Court's decision. *Havens Realty, 455 U.S. at 373, []*.

*Marod*, 733 F.3d at 1330 (additional citations omitted). The Court also noted:

> The Supreme Court therefore concluded that § 804(d) "establishes an enforceable right to **truthful information** concerning the availability of housing" and "[a] tester who has been the object of a misrepresentation made unlawful under § 804(d) has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions." [Citation omitted.]
>
> The Supreme Court admonished "[t]hat the tester may have approached the real estate agent fully expecting that he would receive false information, and **without any intention of buying or renting a home**, does not negate the simple fact of injury within the meaning of § 804(d)." *Id. at 374*; *[]*. The Supreme Court explained that "[w]hereas Congress, in prohibiting discriminatory refusals to sell or rent in § 804(a) of the Act, *42 U.S.C. § 3604(a)*, required that there be a 'bona fide offer' to rent or purchase, Congress plainly omitted any such requirement insofar as it banned discriminatory representations in § 804(d)." *Havens Realty*, 455 U.S. at 374[]..

*Marod*, 733 F.3d at 1330-31 (emphasis added)(additional citations omitted).

The case at bar is substantially similar to *Havens Realty*. Under *Havens Realty*, the plain

language of the statute gave a right of action to a civil rights tester who encountered

**discriminatory  information** about an apartment **even though they did not intend to rent the**

**apartment**. In other words, it was not necessary that the person intended to rent or visit the

physical location. Rather, encountering the discriminatory information was sufficient.

In *Marod*, the Court also noted that other anti-discrimination statutes required that a

plaintiff have "bona fide" status. *Marod*, 733 F.3d at 1333. Because the bona fide requirement

was contained in other statutes, but not included in the applicable provisions of 42 U.S.C. 12182,

its requirement could not be imposed. *Id*.  In *Havens Realty*, the Supreme Court applied the same

rule of statutory construction, noting that a requirement that a plaintiff be a "bona fide patron"

was included in one subsection of the applicable statute, but missing from the subsection that

applied to the case before it. Therefore, the bona fide requirement did not apply. *Havens Realty*,

455 U.S. at 374. In *Marod*, the Court stated:

> These examples illustrate that Congress has said so expressly when it wants to limit the
> class of people protected by anti-discrimination statutes to only clients or customers or to
> people of bona fide status. But Congress expressed no such limitation in the parts of Title
> III that are relevant to Plaintiff[]'s lawsuit. This absence of legislative language restricts
> our interpretation, as we are "not allowed to add or subtract words from a statute."

733 F.3d at 1333-34.  The ability or inability to obtain information in violation of a statute was

recognized as an actionable injury by the Supreme Court in *Federal Election Commission v.*

*Akins*, 524 U.S. 11, 20-25 (1998), which ruled that a group of voters' "inability to obtain

information" that Congress had decided to make public is a sufficient injury in fact to satisfy

Article III. In this regard the Supreme Court stated:

> Indeed, this Court has previously held that a plaintiff suffers an "injury in fact" when the
> plaintiff fails to obtain information which must be publicly disclosed pursuant to a
> statute. *Public Citizen v. Department of Justice*, 491 U.S. 440, 449, [] (1989) (failure to
> obtain information subject to disclosure under Federal Advisory Committee Act
> "constitutes a sufficiently distinct injury to provide standing to sue").

524 U.S. at 21.  To the extent there is any room for doubt, there is in fact **another** subsection of

the Statute which **DOES** contain language imposing a physical nexus requirement. 42 U.S.C.

11

Section 12182(b)(2)(A)(i) prohibits:

> "the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities *from* fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations..." (Emphasis added.)

In that Subsection, the word "from" is critical because its insertion in the Subsection means that a disabled person's encounter with discriminatory eligibility criteria by itself does not give rise to a cause of action unless and until that criteria prevents them **"from"** full and equal access to goods or services. This word, however, is conspicuously absent from any of the provisions that govern online reservations systems.  Because an ORS is a "service" of the place of public accommodation, and failure to comply with the Regulation qualifies as "discrimination", then nothing more is necessary. When a disabled person encounters a non-compliant ORS, he has been "discriminated against on the basis of disability in the full and equal enjoyment of  ... services, ..., privileges, advantages..."  Alterntatively, he is "any person subjected to discrimination" within the meaning of Sections 12188(a) and 12182(b)(2)(A).

Thus, the plaintiff has standing and there is no additional requirement that they actually visit the hotel or intend to book a room. In short, the Plaintiff's encounter with the discriminatory website IS the injury.

The Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) supports this conclusion. In *Spokeo*, the Supreme Court held that improper information which violated the Fair Credit Reporting Act did not, by itself, constitute injury.  However, the *Spokeo* Court specifically recognized the existence of statutes which provide that the dissemination of improper information constitutes an injury with nothing more required. The Court stated:

Just as the common law permitted suit in such instances, the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified. See *Federal Election Comm'n v. Akins*, 524 U. S. 11, 20-25, [] (1998) (confirming that a group of voters' "inability to obtain information" that Congress had decided to make public is a sufficient injury in fact to satisfy Article III); *Public Citizen v. Department of Justice*, 491 U. S. 440, 449, [] (1989) (holding that two advocacy organizations' failure to obtain information subject to disclosure under the Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue").

*Spokeo,* 136 S.Ct. At 1549-50.  In the *Akins* decision referenced by *Spokeo*, the Supreme Court,

in turn, referenced *Havens Realty* as follows:

Indeed, this Court has previously held that a plaintiff suffers an "injury in fact" when the plaintiff fails to obtain information which must be publically disclosed pursuant to a statute..... See also *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-374[] (1982) (deprivation of information about housing availability constitutes "specific injury" permitting standing).

*Akins*, 524 U.S. at 21.  Thus, the *Spokeo* Court neither overturned nor narrowed *Havens Realty*,

but instead acknowledged the body of law to which *Havens Realty* belongs.[4]  Indeed, the

concurring and dissenting opinions in *Spokeo* both expressly recognized *Havens Realty*. *Spokeo,*

136 S.Ct. at 1553, 1555 (Thomas J., Concurring)(Ginsburg, J. Dissenting).

Many authorities in this Circuit have cited *Havens Realty* in recognizing informational

injury. "Being lied to in violation of an anti-trickery statute like the FDCPA is a concrete harm

nevertheless." *Haddad v. Midland Funding, LLC*, 255 F. Supp. 3d 735, 739-40 (N.D. Ill.

2017)("*Havens Realty* turns only on the misleading nature of the representations, not on the

racial motivation behind them"); See also *Bensman v. United States Forest Serv*., 408 F.3d 945,

---

[4]In *Marod*, passim, this Circuit Court found substantial similarities between the ADA and the statute at issue in *Havens Realty* with regard to the issue of standing and the lack of any motive requirement of the individual plaintiff.

955-57 (7th Cir. 2005)(surveying cases and statutes where informational injury is recognized and actionable). As *Bensman* illustrates, where a statute requires that a protected person receive certain information, failure to provide that information is actionable. In *Village of Bellwood v. Dwivedi*, 895 F.2d 1521 (7th Cir. 1990), the Seventh Circuit followed *Havens Realty* in recognizing the standing of testers to sue over false statements regarding housing. See also *Kyles v. J.K. Guardian Sec. Servs.*, 222 F.3d 289 (7th Cri. 2000). In *United States v. Balistrieri*, 981 F.2d 916, 929 (7th Cir. 1992), black testers who were given false information regarding housing had standing to sue even though they had no intention of renting. See also *Chicago v. Matchmaker Real Estate Sales Center, Inc.*, 982 F.2d 1086, 1096 (7th Cir. 1992).

Testers have standing under Title III of the ADA. See *Colo. Cross-Disability Coalition v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211 (10th Cir. 2014), citing *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1333-34 (11th Cir. 2013). As such, the disabled person's motive is entirely irrelevant because all that matters is whether they encountered discrimination as defined by plain words the Statute. *Marod*, *passim*.

Courts have widely recognized the public policy served by plaintiffs acting as "private attorneys general" in enforcing the provisions of the ADA. *See Hensley v. Eckerhart*, 461 U.S. 424, 445(1983) ("All of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain."); *Bruce v. City of Gainesville*, 177 F.3d 949, 952 (11th Cir. 1999); *Mallory v. Harkness*, 923 F.Supp 1546, 1551 (S.D. Fla. 1996) ("Congress intended Section 1988 to prompt plaintiffs to act as citizen enforcers or private attorneys general advancing our nation civil rights objectives and vindicating the

14

liberty of all citizens."). "Civil rights law depends heavily on private enforcement. Moreover, the inclusion of penalties and damages is the driving force that facilitates voluntary compliance with the ADA." *Parr v. L & L Drive-Inn Restaurant*, 96 F.Supp.2d 1065, 1082 (D. Hawaii 2000). Courts have noted: "As a result, most ADA suits are brought by a small number of private plaintiffs who view themselves as champions of the disabled. For the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA." *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1062 (9th Cir. 2007); *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1040 (9th Cir. 2008). See also *Harry MackLowe Real Estate Co.*, 6 F.3d at 904 (acknowledging testers right to enforce private attorney general statute).

The result of a private attorney general statute such as the ADA is that "[i]t is not unprecedented in this country for advocacy groups and individual members of advocacy groups to find it necessary to file a long trail of lawsuits in federal courts to enforce legal and civil rights." *Marod*, 733 F.3d at 1326.

Some courts have held that status a tester "plausibly increases the likelihood that she will visit the [defendant's] website again to test its ADA compliance." *Kennedy v. Sai Ram Hotels*, 2019 U.S. Dist. Lexis 80111, * 9 (M.D. Fla. 2019), citing *Gold Sun Hospitality, LLC*, No. 8:18-cv-842-T-33CPT, DE 23, pp. 31-32. See also *Access 4 All, Inc. v. Absecon Hospitality Corp.*, 2006 WL 3109966, *17 (D.N.J. 2006). *Marod*, 733 F.3d at 1336 (explaining that plaintiff's status as a tester indicated that he would revisit the property many times and therefore tended to show a real and immediate threat of future injury). Moreover, as the Eleventh Circuit

explained, "[i]t is not unprecedented in this country for advocacy groups and individual members

of advocacy groups to find it necessary to file a long trail of lawsuits in federal courts to enforce

legal and civil rights." *Marod*, 733 F.3d at 1326.

Moreover, because Plaintiff has a reliable system of rechecking and revisiting the subject

websites, she has standing. *Parks v. Shipwreck Motel, Inc.*, 2:20-cv-227, p. 6 (M.D. Fla. 5/18/20).

**V.      The Cases Cited By Defendant**

Defendant cites numerous physical property cases for the proposition that this Court

should apply the four part test analyzing: (1) the distance from the property to plaintiff's

residence; (2) the plaintiff's frequency of travel to the area of the defendant's physical property;

(3) the specificity of plaintiff's intent to return; and (4) plaintiff's ties to the area surrounding

defendant's physical property. (Hereinafter "Proximity Test".) However, Defendant would have

this Court overlook the fact that numerous authorities have rejected this test with in cases

involving discrimination by hotels and website discrimination. For example, in *Camacho v.*

*Vanderbilt Univ.*, 2019 U.S. Dist. Lexis 209202, *30 (S.D.N.Y. 2019), one court rejected the

notion that the plaintiff's possible visit to the subject property was at issue, holding:

> Plaintiff has claimed that he was denied access to the Website, not Defendant's physical
> location itself. Thus, Defendant need not have shown that he intended to "return" to
> Defendant's school in Nashville, Tennessee. He is only required to have established a
> reasonable inference that he intended to return to the Website...

In addition to *Camacho*, many courts have held the Proximity Test  was less applicable

(or completely inapplicable) to ORS cases. For example, in  *Parks,* 2020 U.S. Dist. Lexis 86790

at *6, the court ruled that the long distance between the hotel and the plaintiff's home weighed in

16

the plaintiff's favor because hotels cater to travelers from afar.[5]  Numerous other courts have

criticized the Proximity Test's applicability to hotels and website discrimination cases. *Gold Sun*

*Hospitality, LLC*, 8:18-cv-842, DE 23, pp. 30-31;  *Kennedy v. Sai Ram Hotels*, 2019 U.S. Dist.

Lexis 80111, * 9 (M.D. Fla. 2019).  Another court has held that the Proximity test not applicable

to commercial websites (in vision impaired discrimination) because (1) website cases do not

involve physical locations; and (2) no travel is required. *Gniewkowski, et al v. Lettuce Entertain*

*You Enterprises, Inc., et al.*, 251 F. Supp.3d 908, 920 (W.D. Pa. 2017).  "The relevant 'future

injury' inquiry relates to the [hotel's] website and reservation system, rather than the [hotel's]

physical property. *Sai Ram*, 2019 U.S. Dist. Lexis 80111, at *11.

Defendant cites *Carello v. Aurora Policemen Credit Union*, 930 F. 3d 830 (7th Cir. 2019).

However, this reliance is misplaced. *Carello* involved a credit union that only served a closed

group, from  which the plaintiff was legally barred and to which he could never become a

member. *Id.* at 832, 833. Indeed, the *Carello* Court expressly confined its holding as being no

broader than that set forth in an identical case: *Griffin v. Dep't of Labor Fed. Credit Union*, 912

F.3d 649 (4th Cir. 2019). *Griffin* confined its holding to whether " this plaintiff who is barred by

law from making use of defendant's services may sue under the ADA for an allegedly deficient

website", and  expressly stated that it was not considering " the rights generally of people with

---

[5]Numerous other courts have held that the proximity test is not applicable in the context
of hotels because hotels are, by nature, established to accommodate travelers from afar. *Bodley v.
Plaza Management Corp.*, 550 F.Supp.2d 1085, (D. Ariz. 2008);  *D'Lil v. Best Western Encina
Lodge & Suites*, 415 F. Supp.2d 1048, 1056 (C.D. Cal. 2006); *Access 4 All, Inc. V. Wintergreen
Commercial P'ship*, 2005 WL 2989307, at *4 (N.D. Tex. Nov. 7, 2005); .  *Access 4 All, Inc. v.
539 Absecon Blvd.*, 2006 WL 1804578, at *3 (D.N.J. 2006).  Indeed, at least one court has ruled
that a plaintiff who lives **too close** to a hotel has no standing to sue for compliance. See *Access 4
All, Inc. v. Thirty East 30th Street, LLC*, 1:04-Civ-3683, DE 36, at 17 (S.D. N.Y. 12/11/06).

disabilities to sue for Internet-based harms under the ADA..." *Id*. at 652, 653.

Significantly, the *Carello* Court distinguished itself from the sorts of websites applicable to the case at bar, stating: "Carello does not complain that the Credit Union withheld information...." *Id*. at 835. Thus, the *Carello* Court expressly distinguished the statute at issue therein with the type of statute and regulation at issue herein - which prohibit the withholding of information. Indeed, the *Carello* Court recognized that informational injury is actionable when the defendant fails to provide information to a plaintiff that a law entitles him to obtain and review for some substantive purpose. *Id*. at 835. Once that occurs, there is no additional requirement that the plaintiff suffer any additional harm beyond his or her failure to receive the information that the law renders subject to disclosure. *Id.*, citing *Spokeo*.

Defendant also cites *Laufer v. Laxmi & Sons*, 2020 U.S. Dist. LEXIS 79545 (N. D. N.Y. 2020). However, the *Laxmi* Court issued no actual ruling, but simply ordered the plaintiff to submit a brief.

## VI.    Plaintiff Does Intend To Visit Illinois

Even though such is not necessary for purposes of standing, Plaintiff does indeed intend to visit Illinois and travel throughout the entire State as soon as the Covid crisis abates. Laufer Affid., para. 5. She will stay in area hotels during her travels. Because this Defendant and so many others fail to comply with the law, Plaintiff lacks the information she requires to make a meaningful choice. *Id.*

## VII.   Pre-Suit Notice Was Not Required

Defendant also complains that Plaintiff did not provide it with pre-suit notice. However, no such notice is required. *Association of Disabled Americans v. Neptune Designs, Inc.*, 469 F.3d

1357, 1359-60 (11th Cir. 2006). Ignorance of the law is no excuse. *Utermehle v. Norment*, 197

U.S. 40, 56 (1905); *United States v. Dish Network, LLC*, 954 F.3d 970, 978 (7th Cir. 2020).

**VIII.    Conclusion**

For the foregoing reasons, Defendant's motion must be denied.

Respectfully submitted,

By: /s/ Kimberly A. Corkill, Esq.

Kimberly A. Corkill, Of Counsel
Thomas B. Bacon, P.A.
7 N. Coyle Street
Pensacola, FL 32502
ph. 850-375-3475
fx 877-828-4446
kimberlyatlaw@gmail.com
Florida Bar Id. No. 84942

Thomas B. Bacon, Esq.
Thomas B. Bacon, P.A.
644 North Mc Donald St.
Mt. Dora, FL 32757
ph. (850)375-3475
kimberlyatlaw@gmail.com
Florida Bar. Id. No. 139262

**Certificate of Counsel**
I hereby certify that the foregoing document complies with the type volume limitation set
forth in Local Rule 7.1(B)(4)(b). This document contains 6349 words and 516 lines.

By: /s/ Kimberly Corkill

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served via the Court's

electronic filing system upon all parties of record this August 20, 2020.

By: /s/ Kimberly Corkill